No. 90,756

STATE OF KANSAS, *Appellee,* v. TYRON JAMES, *Appellant.*
109 P.3d 1171

Opinion filed
April 22, 2005.

*Stephen B. Chapman,* of Chapman & White, L.L.C., of Olathe, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Phill Kline,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Tyron James appeals his convictions on two counts of first-degree premeditated murder and his concurrent hard 50 life sentences.

This case arises out of the murders of Henry Raimey, Jr., and Billy Holloway, Jr.

On the night of the murders, Raimey's girlfriend, Kandra Poole, saw defendant James get into her white sports utility vehicle (SUV) with Raimey and Holloway. Defendant got into the back seat; Holloway got into the front passenger seat; and Raimey got into the driver's seat and drove away from Poole's home.

A few minutes later, Donnie Hayes saw an accident outside her home, and her husband heard gunshots. Hayes looked outside and saw a white SUV hit a pole. She watched as a young man flew out of the passenger side of the SUV and landed in the middle of the street. The man was wearing only one shoe.

Hayes called 911 and ran outside with her husband. By the time she reached the man with one shoe, he had moved out of the street. She could tell he was hurt badly; his leg appeared to be dangling. Hayes told him not to move, and he asked her not to call the police. She told him she already had. The man then requested help finding his gun and his shoe. Hayes, her husband, and other bystanders fled, and Hayes watched as the man hopped away from the accident scene.

The first police officer to arrive saw Holloway lying on the ground beside the SUV's passenger side and Raimey lying inside the SUV near the driver's seat. Shortly thereafter, the fire department arrived and announced that both men were dead. One of the firefighters informed the police officer that the victims had been shot.

Another investigator arrived on the scene and interviewed the Hayeses. They told the investigator which direction the man with one shoe had gone. The investigator then found the man hiding under a porch near the scene. The man was identified as defendant James.

A gun and a tennis shoe matching the one defendant was wearing when he was apprehended were found in the area the man with one shoe had been searching before he hopped away.

At defendant's trial, a forensic pathologist testified Raimey had been shot twice in the head. The pathologist also testified Holloway had been shot twice, once at the base of his neck and once in the back of his head. The bullet that entered through the base of Holloway's neck exited through his left eye. The pathologist referred to two photographs, State's Exhibits 94 and 95, to describe these entrance and exit wounds. The pathologist also used Exhibit 94 to describe blood at the scene and used both photographs to illustrate his conclusion that the shooter was sitting behind the two victims. Defendant objected to admission of the two photographs, asserting they were gruesome and prejudicial. The district court overruled the objections.

Defendant testified at his trial and denied shooting either victim. He said he was sitting in the front passenger seat, and the shooter was a fourth man he did not know whom Raimey picked up after leaving Poole's home. Defendant testified that he heard a sound and turned his head. He then heard a gunshot and felt a hot sensation. When he tried to push the gun away, it fired three more times. Defendant said he saw Raimey lean forward, heard several more gunshots, and could not remember anything else until he woke up with a cast on his leg.

After the jury returned its two guilty verdicts, the State sought two hard 50 life sentences. The district court found that defendant "knowingly or purposely killed . . . more than one person," an aggravating factor that justified imposition of the sentences. K.S.A. 2001 Supp. 21-4636(b).

James raises only two issues on appeal: He argues that Exhibits 94 and 95 should have been excluded from evidence. He also argues the hard 50 life sentence statute, K.S.A. 2004 Supp. 21-4638,

is unconstitutional in light of the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002); and *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004).

With regard to the first issue, defendant asserts Exhibits 94 and 95 served no purpose other than to prejudice the jury. In his view, because of the mobility of Holloway's head, Exhibit 94 established only that Holloway was looking away from the shooter, not the shooter's position in the SUV. In addition, Exhibit 95, which showed Holloway from the front, should not have been admitted because it did not assist the forensic pathologist in identifying the position of the shooter.

The State argues the photographs were generally relevant for the purpose of establishing the extent and nature of Holloway's wounds. It emphasizes that the pathologist referred to the two pictures while explaining the cause of death, which was helpful to the jury's understanding of his medical testimony. The State also claims the pictures were probative on the manner of death and the violent nature of the crimes.

This court has held:

"Generally all relevant evidence is admissible. K.S.A. 60-407(f). Relevant evidence is defined as 'evidence having any tendency in reason to prove any material fact.' K.S.A. 60-401(b). . . .

" 'Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a murder case. Photographs which are relevant and material in assisting the jury's understanding of medical testimony are admissible. Specifically, photographs which aid a pathologist in explaining the cause of death are admissible. Photographs used to prove the manner of death and the violent nature of the crime are relevant and admissible.' " *State v. Cavaness*, 278 Kan. 469, 477, 101 P.3d 717 (2004) (quoting *State v. Parker*, 277 Kan. 838, Syl. ¶ 5, 89 P.3d 622 [2004]).

Once relevance is established, a district court has the discretion to exclude photographic evidence if the probative value of the photographs is substantially outweighed by the risk of unfair prejudice, or if the photographs are unduly repetitious and cumulative. See *Cavaness*, 278 Kan. at 478 (citing *State v. Dreiling*, 274 Kan. 518, 549, 54 P.3d 475 [2002], and *Parker*, 277 Kan. at 847). "Discretion

is abused only when no reasonable person would take the view adopted by the trial court; the burden of proof is on the party alleging that such discretion has been abused. [Citation omitted.]" *Cavaness*, 278 Kan. at 478.

State's Exhibits 94 and 95 showed "the extent, nature, and number of wounds inflicted," and assisted "the jury's understanding of medical testimony." See *Cavaness*, 278 Kan. at 477. They helped the pathologist explain the cause of death and proved " 'the manner of death and the violent nature of the crime.' " *Cavaness*, 278 Kan. at 477. There was no error in the district court's evaluation of the photographs' relevance.

We also see no abuse of discretion in the district court's weighing of the photographs' probative value and potential for undue prejudice. The photographs were unpleasant but not gruesome. They were not repetitious or cumulative. Rather, they were the only two photographs showing the victim from particular angles.

With regard to defendant's sentencing challenge, "The constitutionality of a statute is a question of law over which this court has unlimited review." *State v. Beard*, 274 Kan. 181, Syl. ¶ 1, 49 P.3d 492 (2002).

Defendant asks that we overturn our decision in *State v. Conley*, 270 Kan. 18, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001), which held the hard 50 sentencing statute constitutional. We have already considered this question in light of *Apprendi*, 530 U.S. 466; *Ring*, 536 U.S. 584; and *Blakely*, 542 U.S. 296. See, *e.g., State v. Hurt*, 278, Kan. 676, 101 P.3d 1249 (2004); *State v. Martis*, 277 Kan. 267, 83 P.3d 1216 (2004). These decisions do not change our analysis of the constitutionality of the hard 50 sentencing statute.

Affirmed.

GERNON, J., not participating.

LARSON, S.J., assigned.