NOT DESIGNATED FOR PUBLICATION

No. 126,454

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARCUS QUINTIN HALL II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Submitted without oral argument. Opinion filed June 20, 2025. Convictions affirmed, sentences vacated, and case remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: A jury in Riley County District Court convicted Defendant Marcus Quintin Hall II of two sex crimes with a child under 14 years old as the result of an encounter in which both he and the girl misrepresented their ages. Those convictions carry presumptive life sentences under Jessica's Law, but the district court mangled how it imposed concurrent sentences on Hall. Hall has appealed. We find no reversible error undermining the jury verdicts. The district court appears to have erred in outlining the legal basis for rejecting Hall's request for lesser sentences and in how it stated the actual

1

punishment. We, therefore, vacate the sentences and remand to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Shortly after joining the Army and being assigned to Fort Riley, Hall communicated with K.M. on social media in March 2021. Hall was then 18 years old, although he represented to K.M. he was a little younger. She was 13 years old and represented to Hall she was 3 years older. They agreed to meet to smoke marijuana. K.M. and a friend of hers showed up. Hall later claimed they smoked only tobacco.

Hall and K.M. continued their social media communications. Hall repeatedly suggested he would provide K.M. with marijuana in exchange for sex. During the second week in July, K.M. agreed. The record indicates Hall had turned 19 years old by then, but K.M. was still 13 years old. Hall came over to her house, and they went to her bedroom. According to K.M., she undressed at Hall's request. Hall began to touch her pubic area; he put his fingers and then penis into her vagina. She fellated him. After she got dressed, K.M. said Hall touched her pubic area over her clothes when they were in the kitchen shortly before he left. The two had limited communication after that and did not see each other again. Hall called K.M. and accused her of giving him a sexually transmitted disease.

K.M. told several friends and her older brother what happened with Hall. She eventually told her mother, and the Riley County Police Department began an investigation. As part of the investigation, an examiner trained to question sexually abused children conducted a videotaped interview of K.M.

The State charged Hall in early January 2022 with one count of rape of K.M., one count of aggravated criminal sodomy, and two counts of aggravated indecent liberties

2

with a child and obtained a warrant for his arrest. Because of the respective ages of Hall and K.M., each of those crimes carried a presumptive sentence of life in prison without parole eligibility for 25 years under K.S.A. 21-6627, commonly known as Jessica's Law. Hall was arrested about two weeks later and promptly taken to the Riley County jail where a detective questioned him. The interrogation is a point on appeal, and we defer a detailed discussion of the encounter. During the videotaped questioning, Hall admitted he touched K.M.'s pubic area and digitally penetrated her; he denied they had sexual intercourse or oral sex. In a recorded video call from jail with his brother, Hall admitted digitally penetrating K.M.

The four-day jury trial began at the end of February 2023. Among other witnesses, the State called K.M., several people she told about what happened with Hall in her bedroom, the detective who interrogated Hall, and the examiner who questioned K.M. The State also presented the videotapes of Hall's interrogation, his call with his brother, and the interview of K.M., along with other exhibits. Hall testified in his own defense and denied having any sexual contact with K.M. He told the jurors he said otherwise to the detective because he thought he might get released from jail and would be in less trouble. The jury convicted Hall of rape and one count of aggravated indecent liberties with a child and found him not guilty of aggravated criminal sodomy and the other count of aggravated indecent liberties with a child.

Hall asked the district court to impose mitigated sentences in part because of his lack of criminal history and his age. At a hearing about a month after the trial, the district court denied Hall's request and pronounced a "sentence of 25 years" on each conviction and ordered that they be served concurrently. The convictions also require that should Hall be released from prison, he will be on parole for the rest of his life and will be required to register and report for life as a sex offender under the Kansas Offender Registration Act, K.S.A. 22-4901 et seq. Hall has appealed.

On appeal, Hall challenges both his convictions and the resulting sentences. We take up the issues he has raised in that order, augmenting our opening recitation of the factual and procedural setting.

*Admission of Police Interrogation of Hall*

Hall contends the district court should not have allowed the jurors to hear his admissions to the police detective or to view the videotape of the interrogation. We find no error on this point.

The procedural posture in the district court matters here. Before trial, the State filed a motion requesting the district court find that Hall voluntarily made the incriminating statements to Detective Brian Zachary, clearing the way for their introduction as admissions during the jury trial. The district court held what is commonly called a *Jackson v. Denno* hearing to determine the voluntariness of Hall's statements. See *State v. Betancourt*, 301 Kan. 282, 289, 342 P.3d 916 (2015) (noting that "at a *Jackson v. Denno* hearing, the issue before the court is whether defendant's statement or confession was voluntary"); see also *Jackson v. Denno*, 378 U.S. 368, 394, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (criminal defendant constitutionally entitled to hearing to determine voluntariness of statements made to government agents). Hall did not file a corresponding motion to suppress the statements either because they were involuntary or because he had been inadequately informed of his *Miranda* rights or had asserted those rights. Both Hall and Det. Zachary testified at the *Jackson v. Denno* hearing, and the district court reviewed the videotape of the interrogation. A day after the hearing, the district court filed a short order finding Hall's statements to Det. Zachary were voluntary, and the State could use them as evidence at trial. During the trial, Hall objected to the

4

admission of the statements on the grounds they were involuntary, thereby preserving that issue for appeal.

On appeal, Hall argues that at the start of the interrogation he asserted his right to have a lawyer present and Det. Zachary refused to honor that request and continued to question him—yielding the incriminating statements. Hall now contends Det. Zachary's refusal rendered those statements involuntary, so the district court erred in admitting them at trial. We find Hall's factual premise and legal conclusion faulty. In explaining our decision, we first outline some basic principles governing police interrogations.

In its now near universally known decision in *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that a government agent conducting a custodial interrogation of an individual must inform them that their statements may be used against them, they have a right to have a lawyer present and a lawyer will be appointed for them if they cannot afford one, and they may decline to answer any questions and may stop answering questions at any time. By requiring those warnings, the Court sought to head off physically or psychologically coercive interrogations producing involuntary and, hence, unreliable confessions. *Jackson*, 378 U.S. at 385-86 (noting "probable unreliability" of involuntary confessions). For *Miranda* purposes, an interrogation is custodial if the person being questioned has been arrested or otherwise reasonably believes they are not free to leave. *State v. Guein*, 309 Kan. 1245, 1253-54, 444 P.3d 340 (2019).

A statement should be considered voluntary if it is the product of the individual's "free and independent will." *State v. Fernandez-Torres*, 50 Kan. App. 2d 1069, 1075, 337 P.3d 691 (2014). Conversely, if a person's will has been overborne by improper threats of harm, promises of benefits, a combination of the two, or other undue influence, their statements are treated as involuntary and, thus, inadmissible as evidence. See *Hutto v. Ross*, 429 U.S. 28, 30, 97 S. Ct. 202, 50 L. Ed. 2d 194 (1976); *State v. Brown*, 286 Kan.

5

170, 174, 182 P.3d 1205 (2008); *State v. Horn*, No. 114,078, 2016 WL 7494377, at *1-2 (Kan. App. 2d 2016) (unpublished opinion). The courts make that assessment from all of the relevant circumstances. The Kansas Supreme Court has recognized a set of factors to be considered for that purpose: "(1) the accused's mental condition; (2) the duration and manner of the interrogation; (3) the ability of the accused on request to communicate with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language." *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 3, 276 P.3d 165 (2012); see *State v. G.O.*, 318 Kan. 386, 401-02, 543 P.3d 1096 (2024) (recognizing factors outlined in *Gilliland*).

A government agent's failure to inform a person of their *Miranda* rights or to honor those rights, as by refusing a clear request for a lawyer, does not render any resulting statements inherently involuntary or unreliable. *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985) ("[T]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary."); accord *Oregon v. Hass*, 420 U.S. 714, 722-23, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975); *United States v. Mohammed*, 693 F.3d 192, 198 (D.C. Cir. 2012); *Horn*, 2016 WL 7494377, at *4. The agent's conduct in violating *Miranda* may be taken into account in assessing whether the questioning took on an impermissibly coercive character.

In reviewing the district court's ruling, we apply the well-known bifurcated standard giving deference to factual findings if they are supported by substantial evidence and then asking whether those findings warrant the legal conclusion, a determination we make without deference. *State v. Garcia*, 297 Kan. 182, 197, 301 P.3d 658 (2013) ("[A]fter we give deference to the district court's findings of fact, we exercise de novo review of the totality of the circumstances to determine whether the confession was voluntarily given."). We do not reweigh the evidence. The State bears the burden of

6

proving the voluntariness of a defendant's custodial statements by a preponderance of the evidence. *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013).

The hearing evidence plainly established Det. Zachary's questioning of Hall was custodial. First, of course, Hall had been arrested. The interrogation took place in a closed interview room at the county jail. Hall wore his Army fatigues. He was restrained with a pair of leg irons but no handcuffs. No other officers were in the room. Det. Zachary and Hall spoke in a business-like tone throughout the interrogation. The questioning lasted about 55 minutes. Hall never claimed to be ill or in distress or discomfort. He neither asked to use the restroom nor suggested he was tired, hungry, or otherwise indisposed. The videotape shows Hall understood the questions Det. Zachary asked and responded coherently. Those circumstances collectively support the district court's conclusion the interrogation was not impermissibly coercive and Hall's statements were voluntary.

On appeal, Hall zeros in on the start of the interrogation and contends Det. Zachary violated his *Miranda* rights by questioning him after he asked for a lawyer to be present. The videotape shows Det. Zachary recited the *Miranda* warnings to Hall correctly, though rapidly. Hall acknowledged that he understood his rights. Det. Zachary then asked Hall if he had an appointed lawyer, and Hall responded that he needed a lawyer but hadn't filled out the forms to get one. Det. Zachary told Hall the appointment process would be part of his appearance in district court. Det. Zachary then asked Hall if he wanted to continue with the questioning. Hall said "okay" and told Det. Zachary he would "end" the questioning if he felt uncomfortable.

Det. Zachary then offered to provide Hall with a copy of the arrest warrant and did so when Hall said he wanted to see it. Hall read the warrant before Det. Zachary continued questioning him. About 45 minutes later, Hall said he no longer wanted to answer questions, and Det. Zachary promptly ended the interrogation. Hall's assertion of his right to remain silent then amounts to circumstantial evidence that his will was not

7

overborne and his statements to that point were voluntary. See *State v. Ross*, No. 122,601, 2022 WL 3131639, at *4 (Kan. App. 2022) (unpublished opinion) ("The very act of asserting one of his *Miranda* rights suggests Ross both understood those rights and was sufficiently in command of his faculties to resist [the detective's] investigative efforts.").

In its written ruling, the district court outlined the exchange between Hall and Det. Zachary about a lawyer at the start of the interrogation and concluded without explanation that Hall "did not invoke his right to counsel or [to] remain silent." As we have said, the district court concluded Hall's statements were voluntary. The district court implicitly found no *Miranda* violation. Because Hall had not filed a motion to suppress, the district court didn't need to explicitly address that issue.

We are disposed to agree with the district court's implicit finding now that Hall has raised a potential *Miranda* violation on appeal as a vehicle for challenging the voluntariness of his statements. An individual must make a clear and unambiguous request to speak with a lawyer or to have a lawyer present during questioning to assert their right. An equivocal or oblique remark is legally insufficient. *Davis v. United States*, 512 U.S. 452, 458-59, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994); *State v. Moore*, 311 Kan. 1019, 1035-36, 469 P.3d 648 (2020). The government agent conducting the interrogation may ask questions to clarify an individual's indefinite statement. *Davis*, 512 U.S. at 461-62; *State v. Walker*, 276 Kan. 939, 945, 80 P.3d 1132 (2003). And a request for a lawyer at some future proceeding rather than during the interrogation is insufficient. *Moore*, 311 Kan. at 1035; *Walker*, 276 Kan. at 945.

On its face, Hall's comment about needing a lawyer appears to refer to the handling of the criminal case generally and not to the incipient interrogation specifically. That would be consistent with Hall mentioning the form required to request an appointed lawyer but then not immediately asking to fill out the form. At best, his comment was ambiguous. Det. Zachary followed up to clarify what Hall meant. In that exchange, Hall

8

said he was agreeable to answering questions and would stop if he became uncomfortable with the way the questioning proceeded. Those circumstances were undisputed, and we see no *Miranda* violation. Our assessment undercuts the premise of Hall's argument on appeal. See *State v. Mejia*, 58 Kan. App. 2d 229, 231-32, 466 P.3d 1217 (2020) (when material facts undisputed, issue presents question of law).

Moreover, as we have explained, a *Miranda* violation does not necessarily render a police interrogation unduly coercive and the suspect's statements involuntary. Even if there were a *Miranda* violation here, Det. Zachary's questioning of Hall was not impermissibly overbearing. The brief duration and nonconfrontational tenor of the interrogation belie any contrary contention, especially coupled with the lack of any complaints from Hall during the questioning suggesting distress or duress.

The district court properly found Hall's statements to be voluntary—the only issue presented there and preserved for appellate review—and, therefore, correctly granted the State's motion to admit the statements at trial.

*Admission of Videotaped Interview of K.M. at Trial*

Hall contends the district court erred in allowing the jurors to view the videotaped interview of K.M. made as part of the police investigation of her allegations. Hall's lawyer objected at trial that the videotape was cumulative because K.M. testified to what happened and, thus, was prejudicial. Indeed, K.M. told the jurors that what she said in the videotaped interview was consistent with her testimony. And that's essentially correct.

District courts exercise broad discretion in admitting cumulative or repetitive evidence. *State v. Meggerson*, 312 Kan. 238, 257, 474 P.3d 761 (2020). A reviewing court will seldom find an abuse of that discretion. 312 Kan. at 257-58. But the repeated admission of the same evidence through multiple sources may be "unduly" cumulative.

9

See *State v. James*, 279 Kan. 354, 357, 109 P.3d 1171 (2005). Our standard for abuse of judicial discretion is a forgiving one. We will find error only if the district court rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *State v. Shields*, 315 Kan 131, 142, 504 P.3d 1061 (2022); *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019). As the party alleging error, Hall bears the burden of proving abuse of discretion. *Darrah*, 309 Kan. at 1227.

That said, as a general matter, an out-of-court statement should not be admitted at trial simply to bolster the credibility of a witness by showing their testimony and the statement are consistent. *State v. McReynolds*, 288 Kan. 318, 328, 202 P.3d 658 (2009); *State v. Whitesell*, 270 Kan. 259, 290, 13 P.3d 887 (2000); 98 C.J.S., Witnesses § 831. This court recognized an exception to that rule to permit the admission of out-of-court statements from child victims of sexual assault specifically to boost their credibility. *State v. Kackley*, 32 Kan. App. 2d 927, 934-35, 92 P.3d 1128 (2004). The rationale in *Kackley* is terse and leans toward the elliptical.[*]

[*] The *Kackley* court relied heavily on *State v. Washington*, 226 Kan. 768, 770, 602 P.2d 1377 (1979), where the court recognized that a woman lodging a criminal complaint of rape could offer corroborating testimony that she had promptly told a third person about the sexual assault even though she may have delayed in contacting law enforcement. The opinion cites a secondary authority to the effect that a delay in reporting the assault would be "'a circumstance which tends to discredit the victim's testimony.'" 226 Kan. at 770 (quoting 65 Am. Jur. 2d, Rape § 76). The rather sexist notion seems to be that a woman who waits to report a sexual assault to the police may be fabricating, while a near contemporaneous account to a third party dispels that presumption. How that reasoning transfers to child sexual abuse cases isn't especially obvious.

Putting *Kackley* to one side, any potential error in admitting the videotape was harmless. The gap between the incident with Hall and K.W.'s reporting it to her mother—

10

prompting the police investigation—combined with Hall's trial testimony denying any sort of sexual misconduct amounted to an attack on K.W.'s credibility and her statements to law enforcement (and her mother) as recent fabrications. A well-accepted evidentiary rule permits the introduction of consistent out-of-court statements by a witness to refute an implication that their version amounts to a tale recently concocted for some ulterior motive. The earlier, consistent accounts, relatively close in time to the disputed events, serve to defuse the accusation of recent fabrication. See *Tome v. United States*, 513 U.S. 150, 156, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995) (prior consistent statement rebuts suggestion of "recent fabrication or improper influence or motive"); *State v. Rodriguez-Guerrero*, No. 115,619, 2018 WL 911481, at *4 (Kan. App. 2018) (unpublished opinion); see also 98 C. J. S. Witnesses, § 831 ("Prior consistent statements may be used in rebuttal to overcome a charge of recent fabrication by the witness."); 81 Am. Jur. 2d, Witnesses § 916.

The State could have introduced K.M.'s accounts of the sexual abuse she gave to her brother and friends (and perhaps to her mother) to refute Hall's trial testimony because his denial impeached her testimony as a recent fabrication. We do not see any reversible error in the State presenting that testimony during its case in chief rather than on rebuttal. There is no reason to assume Hall would not have testified as he did in his own defense had the State not called those witnesses in its principal case. Hall testified primarily to explain away the inculpatory statements he made to Det. Zachary and to refute K.M.'s version of their encounter. The testimony from K.M.'s brother and her friends about her account would have been proper rebuttal evidence.

The videotape of K.M.'s interview with the forensic examiner could not have been offered to counter the implication of recent fabrication because the law enforcement investigation had begun and her account then was remote in time from the incident itself. But any error would have been harmless, given the inculpatory statements Hall made to Det. Zachary and to his brother, and K.M.'s relatively contemporaneous descriptions of

11

the sexual abuse she made to her friends and her brother. The State assembled a strong case against Hall entirely apart from the videotaped interview of K.M. See *State v. Gonzalez*, 307 Kan. 575, 590, 412 P.3d 968 (2018) (strong evidence against defendant militates in favor of harmless error determination); *State v. Knox*, 301 Kan. 671, 682, 347 P.3d 656 (2015).

We are comfortable concluding to a reasonable probability that the jury's verdicts would not have been any different had the videotape of K.M.'s interview been excluded as evidence. In short, any error in admitting the videotape was harmless. See *State v. Broxton*, 311 Kan. 357, 366, 461 P.3d 54 (2020).

*Denial of Hall's Motion for Downward Sentencing Departure*

Because Hall was over 18 years of age and K.M. was under 14 years of age when the crimes of conviction were committed, the presumptive sentences are life in prison with parole eligibility after serving 25 years. K.S.A. 21-6627(a)(1), (c). The prescribed punishment falls outside the sentencing guidelines. But K.S.A. 21-6627(d) permits a district court to depart to a presumptive punishment under the sentencing guidelines for those convictions upon a finding of "substantial and compelling reasons" for mitigation. The statute identifies both the defendant's age and lack of criminal history as mitigators supporting a departure.

Hall filed a motion for departure sentences under K.S.A. 21-6627 and cited his age and lack of criminal history, among other reasons. Had the motion been granted, Hall's rape conviction would have been the primary crime of conviction under the guidelines and carried a presumptive sentence of 147 to 165 months with a midrange of 155 months (or between about 12 years and 14 years in prison) for a criminal defendant without any criminal history. The aggravated indecent liberties conviction would have had a presumptive guidelines sentence of 55 to 61 months. A decision to depart to the

sentencing guidelines is entrusted to the district court's sound judicial discretion. *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). We have already set out the grounds for finding an abuse of that broad authority and do not repeat them here.

At the sentencing hearing, the district court considered statements from K.M. and her family members and statements from Hall's family members. Hall allocuted and offered what might be characterized as a pallid apology; it was not a robust statement of remorse or acceptance of responsibility.

In sentencing Hall, the district court discussed general principles and policies at play in criminal punishment, such as balancing rehabilitation with deterrence and incapacitation. And the district court correctly pointed out that the Legislature has established presumptive sentences that should be imposed absent compelling reasons otherwise. Without tying those principles and policies to the particular circumstances Hall asserted for mitigation, the district court concluded Hall had failed to establish sufficient reasons to mitigate the presumptive life sentences the Legislature set in K.S.A. 21-6627 and, thus, denied his motion to depart to the guidelines.

After laying out those general considerations and before denying the motion to depart, the district court announced that K.S.A. 21-6815 provided "a starting point" for considering mitigation from an off-grid sentence governed by K.S.A. 21-6627. But that is legally incorrect—K.S.A. 21-6815 contains detailed rules for imposing sentencing under the guidelines rather than departing to the guidelines from an off-grid punishment in the first instance. And K.S.A. 21-6815 includes lists of nonexclusive aggravating and mitigating factors a district court may consider in imposing a guidelines sentence either harsher or more lenient than the presumptive punishment.

Of significance here, a defendant's lack of criminal history is not a statutory mitigating factor identified in K.S.A. 21-6815. That's because a presumptive guidelines

13

sentence is determined on a grid using two variables: The severity level assigned to the crime and the defendant's criminal history. So a defendant with little or no criminal history qualifies for a shorter presumptive sentence for a given felony than does a defendant with a substantial criminal history. In effect, criminal history is built into the presumptive guidelines sentences and typically should not be considered as a reason to impose a harsher sentence or a more lenient sentence. *State v. Grady*, 258 Kan. 72, 87-88, 900 P.2d 227 (1995); *State v. Thomas*, 40 Kan. App. 2d 1082, 1087-88, 198 P.3d 203 (2009). Likewise, a defendant's age is not a statutory mitigating factor in K.S.A. 21-6815.

So the district court identified the wrong sentencing statute and never mentioned the correct one. And adjusting a presumptive guidelines sentence either higher or lower was not the issue before the district court.

Given the district court's rather generic explanation for denying Hall's request for a departure to the sentencing guidelines and its misidentification of K.S.A. 21-6815 as the relevant statute, the district court appears to have stepped outside the governing legal framework in reaching its conclusion. In turn, the district court may have given Hall's lack of criminal history and his age too little consideration. That would be an abuse of judicial discretion.

The Kansas Supreme Court has recognized that a district court need not give any reasons for declining to depart from a Jessica's Law sentence. *State v. Dull*, 298 Kan. 832, 842, 317 P.3d 104 (2014) (construing comparable language in predecessor to K.S.A. 21-6627[d]); see *State v. Toensmeyer*, No. 122,878, 2021 WL 5990103, at *2 (Kan. App. 2021) (unpublished opinion) (applying *Dull* to current statute). But the rule cannot insulate a decision that appears to be based on an inapplicable sentencing statute. Given the substantial difference in the possible sentences and the apparent legal error, we vacate the sentences the district court imposed and remand for resentencing.

14

Our conclusion is buttressed by the way the district court expressly pronounced sentence on Hall during the hearing. The district court stated: "On the base conviction of Count 1 of rape, the Court enters the sentence of 25 years. On Count 3, aggravated indecent liberties with a child, the Court enters the sentence of 25 years. The Court orders that they run concurrently." The district court did not otherwise elaborate on the duration of the punishment. On its face, the sentence entails a fixed term that would deviate from the statutorily mandated punishment of life in prison with parole consideration only after 25 years. So it would appear to be an illegal sentence. See K.S.A. 22-3504(c)(1) (sentence "illegal" if it "does not conform to the applicable statutory provision" fixing punishment); but see *State v. Hill*, 313 Kan. 1010, 1014, 492 P.3d 1190 (2021) (district court did not impose illegal sentence in stating punishment as "life imprisonment without possibility of parole" when other aspects of hearing showed district court understood mandatory punishment was life with parole eligibility after serving 50 years). We need not definitively characterize the pronouncement, and neither party has questioned the language the district court used. The remedy would call for vacating the sentences and remanding for resentencing; we have otherwise ordered that relief.

The district court's pronouncement, nonetheless, deepens our concern about the sentencing. Although the lawyers mentioned Hall faced life sentences in arguing their respective positions to the district court, we think the record lacks sufficient clarity that the district court understood it had to impose a life sentence after denying the motion for a departure to the sentencing grid. And a 25-year sentence would have been considerably longer than any presumptive punishment Hall would have received on the sentencing grid, given his lack of criminal history. But it is not as harsh as a life sentence. A defendant may fully satisfy a sentence for a term, whether for 12 months or 25 years, and be free of further governmental impositions. Not so with a life sentence. Even if the Prisoner Review Board grants an offender release from prison, they continue on parole, with all of its restrictions on their liberty, for the rest of their life. Here, the district court may not have appreciated the full impact of the sentence it was obligated to impose. We

15

find that real possibility bolsters the determination that the district court should resentence Hall.

Ours is, however, a narrow ruling. We believe the district court may resentence Hall based on the existing record with or without supplemental argument from the lawyers. But we don't mean to preclude the district court from reopening the record if that appears prudent. Likewise, we do not mean to suggest in any way what result the district court ought to reach in resentencing Hall, taking account of the framework established in K.S.A. 21-6627 and the circumstances surrounding the crimes. See *Powell*, 308 Kan. at 913-15.

Convictions affirmed, sentences vacated, and case remanded with directions.